UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
KENRICK ALTIDOR,

                        Plaintiff,

                - against -

MEDICAL KNOWLEDGE GROUP LLC,

                    Defendant.
----------------------------------------------------------------x

**COMPLAINT**

22 Civ. 7083

**JURY TRIAL
REQUESTED**

Plaintiff KENRICK ALTIDOR, by and through his attorney, Margaret McIntyre,

Attorney at Law, as and for his Complaint alleges the following:

1.      This is an action for declaratory relief, back pay, reinstatement, compensatory and

punitive damages, attorney's fees, costs and other relief to redress employment discrimination on

the basis of race because Defendant subjected Plaintiff to disparate treatment regarding pay,

promotion and termination. This action is brought pursuant to the Civil Rights Act of 1866, 42

U.S.C. §1981; the New York City Human Rights Law ("NYCHRL"), § 8-107(1)(a)(3) of the

Administrative Code of the City of New York; and the New York Equal Pay Act, §§ 194 and 198

of the New York Labor Law ("NYLL").

<u>JURISDICTION AND VENUE</u>

2.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and

1343(a)(4). In addition, Plaintiff invokes the supplemental jurisdiction of this Court pursuant to

28 U.S.C. § 1367(a).

3.      Venue is properly laid in this district pursuant to 28 U.S.C. § 1391(b)(2) because a

substantial part of the events or omissions giving rise to the claims alleged below were

committed within this district.

<u>PARTIES</u>

4.      Plaintiff KENRICK ALTIDOR (hereinafter "Plaintiff"), who was formerly

employed by Defendant, is a resident of Kings County in the State of New York.

5.      Defendant MEDICAL KNOWLEDGE GROUP LLC (hereinafter "Defendant") is

a corporation that provides medical communications services, healthcare consulting, and data

analytic services. Defendant maintains its main office at One World Trade Center, 285 Fulton

Street, 84th Floor, New York, New York 10007.

6.      Upon information and belief, Defendant employs over 600 employees and is

therefore an employer within the meaning of §8-102 of the Administrative Code of New York

City as well as NYLL §§ 2, 190(3).

<u>FACTS</u>

7.      Plaintiff is an African-American man.

8.      Plaintiff was hired by Defendant in or about November 2015 to work as an IT

Help Desk Technician, Level 2 at Defendant's offices in New York City. At that time, Plaintiff

had more than 12 years of experience as an IT technician.

9.      Throughout his employment, Plaintiff was supervised by Jacob Alex Batts, Senior

Vice President of IT.

10.      Mr. Batts directly reported to the CFO/COO, but also reported on a day-to-day

basis on IT issues directly to Mr. Leon Behar, Chief Executive Officer.

11.      Mr. Batts and Mr. Behar are white.

12.      Defendant's workforce is predominately white.

13.     Upon information and belief, when Plaintiff was hired in 2015, one of approximately 8 to 10 non-white people employed by Defendant, out of approximately 125 to 150 employees overall.

14.     Upon information and belief, at the time of Plaintiff's termination in March 2022, he was one of approximately 15-20 non-white people employed by Defendant out of over 600 employees.

15.     Upon information and belief, when Plaintiff was hired in 2015, he was the only IT Help Desk Technician.

16.     In or about November 2019, Defendant expanded its IT Department when it acquired the company called Health Logix ("HLX").  Two of the employees who came over from HLX left within a couple of months.

17.     In or about late December 2019 or early January 2020, Defendant hired Damon Baldecchi as an IT Help Desk Technician, Level 2, working partially in New Jersey and partially in Defendant's New York City office, then in midtown.

18.     Defendant added a third IT Help Desk Technician in late 2020 when it acquired another company, Magnolia. At that time, Patrick Villegas, who is light-skinned Brazilian, became an IT Help Technician, Level 2, with Defendant, who worked out of an office located in Jersey City,  New Jersey.

19.     Upon information and belief, Patrick Villegas was still a Level 2 IT Help Technician as of March 2022.

20.     In or about August or September 2021, Defendant acquired Conisus and Andy Wetterhan joined Defendant Network Support Specialist, the title he held at Conisus. Mr.

Wetterhan performed the same responsibilities as Plaintiff. Mr. Wetterhan, who is white, worked out of an office located in Georgia.

21.     Upon information and belief, Mr. Wetterhan was still a Network Support Specialist as of March 2022.

22.     Plaintiff at all times performed his responsibilities with a high level of professionalism and skill. In recognition of same, he was promoted to Level 3 in or about December 2016, a position he maintained, and was well qualified for, through the time his employment was terminated on March 18, 2022.

23.     As an IT Help Desk Technician, Plaintiff's duties included, primarily, on-boarding and off-boarding employees; triaging help desk tickets; supporting the mobile fleet (cell phones and ipads); purchasing IT equipment and maintaining all IT expenses; maintaining network and email file access; supporting the audio-visual equipment in Defendant's conference rooms; and printer support.  While Plaintiff primarily had responsibility for supporting the IT needs of Defendant's employees, he also sometimes supported employees of Defendant's clients who sometimes needed to coordinate their own software with Defendant's software.

24.     Throughout his employment, Plaintiff regularly received praise from the employees of Defendant (and client employees) he helped with IT problems. He was consistently rated highly in IT-related satisfaction surveys.

25.     Prior to December 2021, Plaintiff  had received no negative feedback about his performance. In November 2021, he was told by Jacob Alex Batts, that he was doing a great job. Since August 2021, Plaintiff had been taking over some responsibilities of the System Engineer who left and was not replaced until December 2021.

26.     Since in or about November or December 2019, Plaintiff was the most senior of the IT Help Desk Technicians.  He did a lot of informal managing of the Technicians' day to day tasks, such as assigning tickets, checking to see if the other technicians needed help with any tickets, asking if they had seen trends with problems they were having that could be elevated to the System Engineer to prevent similar future problems

27.     In December 2021, Mr. Altidor mistakenly gave access to the email account of a recently terminated employee. He was asked to grant access to the account "ASAP" and he thought the person to whom he gave access was the terminated employee's supervisor, who would have been automatically eligible for access. It turned out the person was instead the supervisor's manager, one level above the terminated employee's supervisor. The mistake was discovered the next day.

28.     Upon information and belief, while the mistake did take some time for Plaintiff to fix, there was no breach of information outside of the company. Mr. Batts told Plaintiff that day that his mistake was a "fire-able offense," but gave him no written warning or any indication whether he was indeed going to be fired. The mistake that Plaintiff made was not more serious than mistakes other Help Desk Technicians have made, and certainly was not serious enough by itself to justify firing an otherwise high performing employee.

***Discriminatory Failure to Promote***

29.     The following Monday, Damon Baldecchi, a Level 3 Help Desk Technician who is white, was promoted to System Administrator, and he assumed some of the informal managerial responsibilities that Mr. Altidor had been performing. This was very surprising to Mr. Altidor, as there had been no announcement of an opening for a System Administrator. If there had been, he would have applied.

5

30.     Upon information and belief, in or about late 2019, Damon Baldecchi was hired by Defendant as an IT Help Desk Technician Level 2 and upon his hire, had approximately five years of experience as an IT technician.

31.     Upon information and belief, at some point between late 2019 and late 2021, Mr. Baldecchi was promoted to IT Help Desk Technician Level 3.

32.     Mr. Baldecchi was a good IT Help Desk Technician but was not better qualified than Plaintiff for promotion to System Administrator in December 2021.

33.     The suddenness of Mr. Baldecchi's promotion over Plaintiff suggests that Mr. Batts knew that Plaintiff was the best qualified IT Technician to promote to System Administrator, but that he did not want, or was not permitted by someone higher in the company, to put Plaintiff in the position.

34.     Mr. Batts exaggerated the seriousness of Plaintiff's mistake, and made other unfounded comments to Plaintiff for the first time to suggest his work was subpar, as a pretext to create the impression that Mr. Baldecchi was better qualified for the promotion than Plaintiff.

***Disparate Treatment Based on Race, Culminating in Firing***

35.     Over the next three months, Plaintiff anxiously wondered whether he was going to be fired because of the mistake that he made in December 2021. Mr. Batts said nothing further to him about the mistake and did not offer feedback on Plaintiff's performance even though they communicated regularly and Plaintiff solicited feedback on his performance.

36.     In or about early 2022, Plaintiff was told by Mr. Batts that he would be required to return to the office in New York City five days a week, even though everyone else in the IT Department remained working remotely.

37.     Plaintiff returned to the office but objected to being required to work in the office, for several reasons. He had a young child at home, and childcare was often not reliable due to frequent shutdowns because of Covid-19.  Moreover, there were seldom occasions for any single person other than Plaintiff to be in the office. Thus, for the vast majority of the time Plaintiff worked in the office in early 2022, he was helping others with IT issues on a remote basis. Obviously, the same work could have been performed by him at his home in Brooklyn.

38.     Upon information and belief, Defendant required Plaintiff to work in the office starting in early 2022 with the intention of prompting Plaintiff to quit his job.

39.     Plaintiff was fired on March 18, 2022.

40.     When Plaintiff was fired, he was told that he was being fired for low performance, and for having outstanding help tickets, neither of which were true. His performance had not been criticized at all since his mistake in December, and he had no outstanding tickets.

41.     Defendant's explanation for firing Plaintiff was a pretext for race discrimination and to cover up the discriminatory promotion decision.

42.     Several of Plaintiff's colleagues expressed shock to him that he had been fired, as it was so well known within the company what a good IT Help Technician Plaintiff  was.

43.     While Mr. Baldecchi was a good employee, he also made mistakes, as Mr. Batts well knew, and he continued to make mistakes after his promotion in December 2021, and Plaintiff had help Mr. Baldecchi fix those mistakes in early 2022. Upon information and belief, Mr. Baldecchi suffered no negative repercussions from Defendant for making mistakes.

***Discriminatory Pay Based on Race***

44.     Upon information and belief, when Damon Baldecchi was hired in or about late 2019, he was paid approximately $5,000 more per year than Plaintiff was earning at the time as a

7

Level 3, even though Mr. Baldecchi was hired as a Level 2 and had significantly less experience as an IT technician than Plaintiff at that time.

45.     Upon information and belief, Mr. Baldecchi's salary was increased annually after 2019 and remained higher than Plaintiff's salary up to the time when Plaintiff was fired on March 18, 2022.

46.     As an IT Help Technician Level 3, Damon Baldecchi performed the same duties and responsibilities as Plaintiff, except that he held none of the managerial-type responsibilities that Plaintiff held.

47.     Throughout the period when they both worked as IT Help Desk Technicians, Plaintiff and Damon Baldecchi performed substantially similar work, when viewed as a composite of skill, effort, and responsibility, and they performed their work under similar working conditions.

48.     Upon information and belief, the pay of Plaintiff and Damon Baldecchi was not at any time based on a seniority system; a merit system; a system which measures earnings by quantity or quality of production; or a bona fide factor other than status within one or more protected class or classes, such as education, training, or experience.

49.     Plaintiff and Damon Baldecchi worked in the same establishment in that Defendant's main headquarters in New York City and its two offices in suburban New Jersey are so centralized and interrelated that they together constitute a single establishment. All of Defendant's IT Department, including Plaintiff and Damon Baldecchi, reported directly to Jacob Alex Batts, Senior Vice President of IT, regardless of the physical location where they worked when not working remotely.

50.     Upon information and belief, other non-Black employees who worked as IT Help Desk Technicians, even if their titles were different than Plaintiff's, also received higher pay than Plaintiff for performing substantially similar work, when viewed as a composite of skill, effort, and responsibility, and performing their work under similar working conditions.

51.     Due to the unlawful actions of Defendant, Plaintiff has suffered loss of income and fringe benefits which would have accrued to him.

52.     Due to the unlawful actions of Defendant, plaintiff has suffered and continues to suffer emotional distress, mental anguish and humiliation.

53.     Pursuant to §8-502(c) of the Administrative Code of the City of New York, a copy of this complaint shall be served upon the New York City Law Department and the New York City Commission on Human Rights within 10 days of the filing of this action.

<u>AS AND FOR A FIRST CAUSE OF ACTION</u>

54.     Plaintiff realleges and incorporates by reference the foregoing allegations as if fully set forth herein.

55.     Defendant's acts, practices, and policies described herein constitute intentional discrimination against Plaintiff on the basis of his race and color, in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981, in that Plaintiff was denied a promotion for which he was qualified.

<u>AS AND FOR A SECOND CAUSE OF ACTION</u>

56.     Plaintiff realleges and incorporates by reference the foregoing allegations as if fully set forth herein.

57.     Defendant's acts, practices, and policies described herein constitute intentional discrimination against Plaintiff on the basis of his race and color, in violation of the Civil Rights

Act of 1866, 42 U.S.C. § 1981, in that Plaintiff was paid a lower rate of pay than similarly situated employees who were not African-American or dark-skinned.

### AS AND FOR A THIRD CAUSE OF ACTION

58.     Plaintiff realleges and incorporates by reference the foregoing allegations as if fully set forth herein.

59.     Defendant's acts, practices, and policies described herein constitute intentional discrimination against Plaintiff on the basis of his race and color, in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981, in that Plaintiff was fired for discriminatory reasons.

### AS AND FOR A FOURTH CAUSE OF ACTION

60.     Plaintiff realleges and incorporates by reference the foregoing allegations as if fully set forth herein.

61.     Defendant's acts, practices, and policies described herein constitute intentional discrimination against Plaintiff on the basis of  his race and color, in violation of the New York City Human Rights Law ("NYCHRL"), § 8-107(1)(a)(3) of the Administrative Code of the City of New York, in that he was denied a promotion for which he was qualified.

### AS AND FOR A FIFTH CAUSE OF ACTION

62.     Plaintiff realleges and incorporates by reference the foregoing allegations as if fully set forth herein.

63.     Defendant's acts, practices, and policies described herein constitute intentional discrimination against Plaintiff on the basis of  his race and color, in violation of the New York City Human Rights Law ("NYCHRL"), § 8-107(1)(a)(3) of the Administrative Code of the City of New York, in that Plaintiff was paid a lower rate of pay than similarly situated employees who were not African-American or dark-skinned.

## AS AND FOR A SIXTH CAUSE OF ACTION

64.     Plaintiff realleges and incorporates by reference the foregoing allegations as if fully set forth herein.

65.     Defendant's acts, practices, and policies described herein constitute intentional discrimination against Plaintiff on the basis of  his race and color, in violation of the New York City Human Rights Law ("NYCHRL"), § 8-107(1)(a)(3) of the Administrative Code of the City of New York, in that Plaintiff was fired for discriminatory reasons.

## AS AND FOR A SEVENTH CAUSE OF ACTION

66.     Plaintiff realleges and incorporates by reference the foregoing allegations as if fully set forth herein.

67.     By the acts and practices described above, Defendant violated the New York Equal Pay Act, Sections 194 and 198 of the New York Labor Law, in that Defendant has discriminated against Plaintiff by paying non-Black employees higher wages than Plaintiff for performing substantially similar work, when viewed as a composite of skill, effort, and responsibility, which was performed under similar working conditions.

68.     Defendant knew that its actions constituted unlawful violation of equal pay laws and/or showed reckless disregard for Plaintiff's statutorily protected rights.

69.     Plaintiff suffered lost wages as a result of Defendant's willful and unlawful violation of the New York Equal Pay Act.

<u>DEMAND FOR RELIEF</u>

WHEREFORE, Plaintiff respectfully requests that this Court:

1.     Declare, adjudge and decree that Defendant subjected Plaintiff to intentional discrimination against Plaintiff on the basis of his race and color, in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981, by paying Plaintiff a lower rate of pay than similarly situated employees who were not African-American or dark-skinned.

2.     Declare, adjudge and decree that Defendant subjected Plaintiff to intentional discrimination against Plaintiff on the basis of his race and color, in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981, by denying Plaintiff a promotion for which he was qualified based on his race or color.

3.     Declare, adjudge and decree that Defendant subjected Plaintiff to intentional discrimination against Plaintiff on the basis of his race and color, in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981, by firing Plaintiff for discriminatory reasons based on his race or color.

4.     Declare, adjudge and decree that Defendant subjected Plaintiff to intentional discrimination against Plaintiff on the basis of his race and color, in violation of the New York City Human Rights Law ("NYCHRL"), § 8-107(1)(a)(3) of the Administrative Code of the City of New York, by paying Plaintiff a lower rate of pay than similarly situated employees who were not African-American or dark-skinned.

5.     Declare, adjudge and decree that Defendant subjected Plaintiff to intentional discrimination against Plaintiff on the basis of his race and color, in violation of the New York City Human Rights Law ("NYCHRL"), § 8-107(1)(a)(3) of the Administrative Code

of the City of New York, by denying Plaintiff a promotion for which he was qualified based on his race or color.

6.      Declare, adjudge and decree that Defendant subjected Plaintiff to intentional discrimination against Plaintiff on the basis of his race and color, in violation of the New York City Human Rights Law ("NYCHRL"), § 8-107(1)(a)(3) of the Administrative Code of the City of New York, by firing Plaintiff for discriminatory reasons based on his race or color.

7.      Declare, adjudge and decree that Defendant willfully violated the New York Equal Pay Act, New York Labor Law §§ 194 and 198.

8.      Order Defendant to pay Plaintiff damages in the amount equal to the value of all back pay, including benefits, plus interest thereon, that Plaintiff lost because of Defendant's discriminatory actions, including Defendants' discriminatory pay practices.

9.      Order Defendant to pay Plaintiff damages in the amount equal to the value of all back pay, including benefits, plus interest thereon, that Plaintiff lost as a result of Defendant's discriminatory actions, including Defendant's discriminatory failure to promote Plaintiff and Defendants' discriminatory termination of Plaintiff's employment.

10.     Order Defendant to reinstate Plaintiff in employment, with full seniority and all other benefits; or, in the alternative, award Plaintiff front pay.

11.     Enjoin Defendant from engaging in further discriminatory or retaliatory actions against Plaintiff.

12.     Award Plaintiff compensatory damages.

13.     Award Plaintiff punitive damages.

14.     Award Plaintiff liquidated damages under the New York Equal Pay Act, Sections 194 and 198 of the New York Labor Law.

13

15.     Award Plaintiff all costs and reasonable attorney's fees incurred in

connection with this action.

16.     Award Plaintiff such other and further relief as this Court may deem just

and proper.

Dated:        August 19, 2022
              New York, New York


_____/s/_____
Margaret McIntyre, Attorney at Law
Attorney for Plaintiff
195 Montague Street, 14th Floor
Brooklyn, New York 11201
(212) 227-9987