USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/16/2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KENRICK ALTIDOR,

                    Plaintiff,

          -against-

MEDICAL KNOWLEDGE GROUP LLC,

                    Defendant.

1:22-cv-7083 (MKV)

**OPINION AND ORDER GRANTING
DEFENDANT'S MOTION
TO DISMISS**

MARY KAY VYSKOCIL, United States District Judge:

Plaintiff Kenrick Altidor filed a complaint against Defendant Medical Knowledge Group LLC alleging violations of his rights under various federal, state, and city anti-discrimination statutes. Specifically, Plaintiff claims that he was wrongfully terminated for his race, paid less than similarly situated colleagues, and passed up for promotions. Defendant seeks dismissal of this action for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the motion is GRANTED.

## BACKGROUND[1]

Plaintiff is a black man who worked as an IT Help Desk Technician for Defendant Medical Knowledge Group LLC. AC ¶¶ 7–8. When Plaintiff was hired in 2015, he was one of roughly eight to ten non-white people employed by Defendant, out of approximately 125 to 150 total employees. AC ¶¶ 8, 13. He was also the only IT Help Desk Technician who was black. AC ¶¶ 16–20. A year after being hired, Plaintiff was elevated from a Level 2 IT Help Desk Technician to Level 3. AC ¶¶ 8, 23.

---

[1] The facts as stated herein are drawn from Plaintiff's Amended Complaint [ECF No. 16] ("AC") and are assumed to be true for the purposes of this motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

As an IT Help Desk Technician, Plaintiff's duties included on-boarding and off-boarding employees, triaging help desk tickets, supporting the mobile fleet (cell phones and ipads), buying IT equipment and maintaining all IT expenses, maintaining network and email file access, supporting the audio-visual equipment in Defendant's conference rooms, and printer support. AC ¶ 24. Additionally, as the most senior IT Help Desk Technician, Plaintiff often informally managed the other technicians' day-to-day tasks, such as assigning tickets and checking to see whether the other technicians needed any assistance. AC ¶ 27. Throughout his employment, Plaintiff regularly received praise from those whom he assisted with IT problems, and he consistently received high ratings in IT-related satisfaction surveys. AC ¶ 25. Indeed, Plaintiff had received no negative feedback about his performance prior to December 2021. AC ¶ 26. But that is when things changed.

In December 2021, Plaintiff mistakenly gave access to the email account of a recently terminated employee to another employee who was not entitled to such access. AC ¶ 28. The mistake was not discovered until the following day, and it took "some time" for Plaintiff to fix. AC ¶ 29. Plaintiff's supervisor told him that day that his mistake was a "fire-able offense." AC ¶ 29. Plaintiff claims, however, that the mistake was "no more serious than mistakes other Help Desk Technicians have made." AC ¶ 29. Indeed, Plaintiff alleges that another Level 3 Help Desk Technician, Drew Saffrin, who is white, also granted a wrong person access to electronic files or made "other security-related mistakes comparable to the mistake that Plaintiff made." AC ¶ 38. Plaintiff alleges that Damon Baldecchi, another white co-worker, "also made mistakes." AC ¶ 51.

The week after Plaintiff's mistake, Baldecchi was promoted to Systems Administrator, assuming some of the informal managerial responsibility that Plaintiff had already been performing for quite some time. AC ¶ 30. The Systems Administrator position had been vacant since Drew Saffrin was promoted to Systems Engineer three years earlier in 2018. AC ¶¶ 37, 39.

Plaintiff found Baldecchi's sudden promotion surprising, given that there had been no announcement of an opening for the position. AC ¶ 30. Additionally, Defendant had only hired Baldecchi in late 2019, when he started as Level 2 IT Help Desk Technician. AC ¶ 31. Plaintiff claims that he would have applied to the Systems Administrator position had there been an announcement of the vacancy, AC ¶ 30, and that the suddenness with which Baldecchi was promoted demonstrates that Defendant was attempting to use Plaintiff's recent mistake as a pretext for promoting a white employee with less experience and qualifications. AC ¶¶ 33–36.

Shortly after Baldecchi was promoted, Plaintiff was told that he would have to return to the office in New York City five days a week. AC ¶ 43. Plaintiff found this unusual because all other employees in the IT Department continued to work remotely. AC ¶ 43. Plaintiff returned to the office as requested, but he objected to doing so because of his childcare responsibilities at home and the fact that hardly any other employees were in the office. AC ¶ 44. Plaintiff suspected that he was only told to go back to the office in an effort to prompt him to quit his job. AC ¶ 45.

In March 2022, Plaintiff was fired. AC ¶ 46. Defendant did not cite Plaintiff's "fire-able offense" from December as a reason for his termination. AC ¶ 49. Rather, Plaintiff was told that he was being fired because of his "low performance" and for having "outstanding help tickets." AC ¶ 47. Plaintiff contends that neither of these things were true. He alleges that his performance had not been criticized at all since his mistake in December and he had no outstanding help tickets. AC ¶ 47. After terminating Plaintiff, Defendant replaced him with another black employee. AC ¶ 54. Plaintiff claims that this was done only to show that his termination was not motivated by race. AC ¶ 54.

At the time he was fired, Plaintiff was making less money than Baldecchi. AC ¶ 57. Plaintiff contends this was not just a product of Baldecchi's recent promotion. Plaintiff alleges that he was informed that when Baldecchi was hired in 2019, he was paid approximately $5,000

more per year than Plaintiff, even though Baldecchi was hired as a Level 2 IT Technician and Plaintiff, by that time, had been promoted to Level 3.  AC ¶ 56.  Indeed, Plaintiff claims that at all times until he was fired, he received a lower salary than Baldecchi, *see* AC ¶ 57, despite the fact that they performed substantially similar work, had a similar level of skill, and worked under similar conditions.  AC ¶ 59.  Plaintiff further alleges that the pay he and Baldecchi received was not at any time based on a seniority system, a merit system, or any other factor such as education, training, or experience.  AC ¶ 60.  Plaintiff further claims that this was part of a larger pattern, and that other non-black employees who worked as IT Help Desk Technicians received higher pay than Plaintiff for performing "substantially similar work, when viewed as a composite of skill, effort, and responsibility, and performing their work under similar working conditions."  AC ¶ 62.

## PROCEDURAL HISTORY

Plaintiff filed this action against Defendant, bringing various discrimination claims under Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981, the New York City Human Rights Law ("NYCHRL"), § 8-107(1)(a)(3) of the Administrative Code of the City of New York, and the New York Equal Pay Act, §§ 194 and 198 of the New York Labor Law ("NYLL").  Defendant filed a pre-motion letter in anticipation of its motion to dismiss the complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), outlining the purported deficiencies in Plaintiff's Complaint.  [ECF No. 12].  In response, and with leave of the Court [ECF No. 14], Plaintiff filed an Amended Complaint, which added some new allegations, but pled the same causes of action as the initial complaint.  [ECF No. 16].  Thereafter, Defendant moved to dismiss the Amended Complaint [ECF No. 20], submitting a Memorandum of Law in Support [ECF No. 22] and the Declaration of Costantino Gomprecht [ECF No. 21].  Plaintiff opposed the motion [ECF No. 23], and Defendant replied [ECF No. 24].

## LEGAL STANDARD

### I.        Rule 12(b)(6) Motion to Dismiss

To survive a Rule 12(b)(6) motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While the Court "must accept as true all of the allegations contained in a complaint," this "tenet . . . is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

### II.       Section 1981 Claims for Discrimination

In order to survive a motion to dismiss a Section 1981 claim, the plaintiff must plausibly show that he "is a member of a protected class, was qualified, suffered an adverse employment action, and has at least *minimal* support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015) (emphasis in original) (citing *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 122 S.Ct. 992 (2002)).[2]  In other words, the facts alleged in the complaint must give plausible support to the "reduced requirements that arise under *McDonnell Douglas* in the initial phase of [] litigation." *Id.*  Although "under a notice pleading system, it is not appropriate to require a plaintiff to plead facts establishing a *prima facie* case," the elements of a *prima facie* case may be used as a "prism to shed light" upon the plausibility of the claims. *Littlejohn*, 795 F.3d at 308, 311 n.9 (citing *Rodriguez–Reyes v. Molina–*

---

[2] Disparate treatment claims under Section 1981 are subject to the same *McDonnell Douglas* burden-shifting framework as Title VII claims. *Littlejohn*, 795 F.3d at 312 (referencing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801–03 (1973)); *see also Jimenez v. Delta Airlines, Inc.*, No. 21-2899-CV, 2023 WL 2910530, at *2 (2d Cir. 2023); *McLee v. Chrysler Corp.*, 109 F.3d 130, 134 (2d Cir. 1997).

*Rodriguez*, 711 F.3d 49, 54 (1st Cir. 2013)).  The alleged facts "need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination." *Id*. at 311.  They must nonetheless "give plausible support to a minimal inference of discriminatory motivation." *Id*.  However, unlike Title VII claims, in Section 1981 claims, a Plaintiff bears the additional burden of "showing that race was a but-for cause of [his] injury." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, --- U.S. ---, 140 S. Ct. 1009, 1014–15 (2020); *Jimenez*, 2023 WL 2910530, at *3.  In other words, Plaintiff must plead facts supporting an inference that, "but-for" his race, he would not have suffered the loss of any legal interests protected by Section 1981.  That race was merely a "motivating factor" for an adverse employment action is insufficient to state a Section 1981 claim.  *Comcast Corp.*, 140 S. Ct. at 1011.

## ANALYSIS

In this action, Plaintiff claims Defendant violated his Section 1981 rights in three ways: (1) discriminatory termination; (2) pay discrimination; and (3) discriminatory failure to promote.  To state a claim based on any of these grounds, a Plaintiff must sufficiently allege factual support that the employer was motivated by discriminatory intent when it took the adverse action.  *Littlejohn v. City of New York*, 795 F.3d at 311 (2d Cir. 2015).  The fundamental flaw in Plaintiff's Amended Complaint is its failure to sufficiently allege facts that plausibly give rise to an inference that Defendant acted with discriminatory intent.  As a result, Plaintiff fails to plead that "but-for" his race he would not have suffered the adverse employment actions of which he complains.

Plaintiff does not plead any factual allegations regarding animus, harassment, disparaging comments, or anything else that might directly lead to a conclusion that adverse employment action was taken against him for a discriminatory reason.  Nor does Plaintiff allege that he ever

complained to anyone about real or perceived discrimination in the workplace.[3]   Further, while

Plaintiff's allegations give a vague breakdown of the racial makeup of the defendant company

when he was hired (AC ¶ 13) and when he was terminated (AC ¶ 14), the pleading is devoid of

any relevant detail such as the makeup and qualifications of the applicant pool.  *See Burgis v. New*

*York City Dep't of Sanitation*, 798 F.3d 63, 70 (2d Cir. 2015) (holding that to show discriminatory

intent "based on statistics alone" plaintiffs cannot "show only the raw percentages . . . without

providing any detail as to the number of individuals at each level, the qualifications of individuals

in the applicant pool and of those hired for each position"); *see also Neary v. Gruenberg*, 730 F.

App'x 7, 12 (2d Cir. 2018) (affirming dismissal of age discrimination claim because plaintiff

"fail[ed] to plead facts that allow us to infer that the applicants ultimately hired were

disproportionately younger than 40, *relative to the applicant pool*") (emphasis added).

Instead, Plaintiff asks the Court to draw discriminatory inferences from his allegations that

white colleagues were not subject to the same adverse employment actions.  Indeed, allegations

that an employer treated an employee less favorably than a similarly situated employee outside of

his protected group is an accepted way to demonstrate discriminatory intent.  *McGuinness v.*

*Lincoln Hall*, 263 F.3d 49, 53 (2d Cir. 2001).  However, Plaintiff fails to plead factual allegations

sufficient to allow a plausible inference that he was similarly situated to any of his former white

colleagues referenced in the Amended Complaint.

"When considering whether a plaintiff has raised an inference of discrimination by

showing that []he was subjected to disparate treatment, we have said that the plaintiff must show

[]he was similarly situated *in all material respect* to the individuals with whom []he seeks to

---

[3] Plaintiff does allege in his Amended Complaint that he "spoke to [his supervisor] about the unfairness of Baldecchi making mistakes but having a promotion while he . . . was threatened with termination over a mistake."  AC ¶ 53. However, Plaintiff does not say whether he attributed that unfair treatment to his race when speaking with his supervisor.  Thus, the Amended Complaint does not allege that he ever raised any *discriminatory* concerns with Defendant. Plaintiff concedes as much in his Opposition.  *See* [ECF No. 23] at 15 n.2.

compare [him]self." *See Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000) (emphasis added) (internal quotations omitted). What constitutes "all material respects" must be judged based on "(1) whether the plaintiff and those he maintains were similarly situated were subject to the same workplace standards and (2) whether the conduct for which the employer imposed discipline was of comparable seriousness." *Graham*, 230 F.3d at 40.

## I.       Discriminatory Termination (Section 1981)

Plaintiff asks the Court to draw a discriminatory inference from his termination because two of his white colleagues were not fired for making mistakes. First, Plaintiff alleges that Saffrin made "mistakes comparable to the one Plaintiff made in December 2021" by "granting the wrong person access to electronic files," but Saffrin was never terminated. AC ¶¶ 37–38. However, Plaintiff alleges no facts that claim he and Saffrin performed the same duties or "were subject to the same workplace standards." *Graham*, 230 F.3d at 40. In fact, Plaintiff provides no factual allegations at all regarding Saffrin's working conditions, supervisors, or specific duties. *See Wu v. Good Samaritan Hosp. Med. Ctr.*, 815 F. App'x 575, 581 (2d Cir. 2020). Plaintiff merely relies on his allegation that Saffrin also served "as Help Desk Technician," without any mention of Saffrin's specific job duties and whether or not they were comparable to his own. This Court cannot plausibly infer that Saffrin was "subject to the same workplace standards" without more. Thus Plaintiff has not plead that Saffrin is similarly situated to him based solely on a "broad generalization[] drawn from job titles." *Dass v. City of Univ. of New York*, No. 18-cv-11325 (VSB), 2020 WL 1922689, at *6 (S.D.N.Y. 2020) (finding broad generalizations drawn from job titles do not meet the "similarly situated" pleading requirements under the Equal Pay Act).

Second, Plaintiff points to Baldecchi as a second "comparator" to demonstrate discriminatory intent. Plaintiff rather generically alleges that he and Baldecchi "performed the same duties and responsibilities" and "performed substantially similar work . . . under similar

working conditions." AC ¶¶ 58–59.  These allegations are wholly conclusory.  *See Iqbal*, 556 U.S. at 678 (finding "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" without fact specific allegations).  Moreover, with respect to the suggestion that the conduct of Baldecchi was similar in all material aspects to Plaintiff's "fire-able" offense, Plaintiff merely alleges that Baldecchi "made mistakes."  AC ¶¶ 51, 53.  This falls far short of the Second Circuit requirement that plaintiffs demonstrate that the conduct of the comparator is "of comparable seriousness."  *Graham*, 230 F.3d at 40.  Plaintiff makes no attempt to allege exactly what kind of "mistakes" Baldecchi made.  For instance, Baldecchi may simply have forgotten to turn off the office lights at the end of the day.  In that case, Plaintiff's "fire-able offense" would not be equivalent to Baldecchi's mistakes, and the two men would not be similarly situated at all.  *Graham*, 230 F.3d at 39 (finding plaintiff's comparators were not similarly situated because plaintiff "presented no evidence that the alleged *conduct* of the comparators was similar to her conduct").  As such, the Court cannot find that Plaintiff has pled factual allegations sufficient to conclude that Baldecchi is similarly situated to Plaintiff with respect to his discriminatory termination claim.

In any event, by his own allegations, *Plaintiff was replaced with someone of his own race*. AC ¶ 55.  The Court breaks no new ground in concluding that "[t]he fact that plaintiff's immediate replacement is of the same protected class[] effectively precludes plaintiff from establishing that [his] termination occurred under the requisite circumstances giving rise to an inference of discrimination."  *DeJesus v. Dist. One Cmty. Educ. Council*, No. 08-cv-10666, 2010 WL 3959624, at *4 (S.D.N.Y. Sept. 14, 2010).  Plaintiff cannot escape that clear conclusion by alleging that Defendant replaced him with another black employee solely to cover up its discriminatory intent. AC ¶ 55.  This is especially so when Plaintiff himself concedes that he was fired for his poor performance only a few months after making a serious security blunder.  AC ¶¶ 58–59.  In fact,

Plaintiff affirmatively pleads that "[o]ver the next three months following his mistake in December 2021, Plaintiff anxiously wondered whether he was going to be fired because of the mistake that he made in December 2021." AC ¶ 42. Thus, Plaintiff effectively concedes that this serious security error was a "fire-able offense." There is nothing surprising or suspect or discriminatory about that. As such, Plaintiff's third cause of action, his claim of discriminatory termination under Section 1981, is dismissed.

## II.    Pay Discrimination (Section 1981)

Next Plaintiff asks the Court to draw a discriminatory inference from Defendant for an alleged disparity in pay. Plaintiff plausibly alleges that when Baldecchi was hired as a level 2 IT Help Desk Technician, he was paid approximately $5,000 more per year than Plaintiff was earning at the time as a higher Level 3 IT Help Desk Technician. AC ¶ 56. However, Plaintiff's allegations with respect to Baldecchi's comparable "workplace standards" are wholly conclusory. He provides no factual allegations to demonstrate that he and Baldecchi performed substantially the same work, simply reciting—without factual details—that they "performed the same duties and responsibilities" and "performed substantially similar work." AC ¶¶ 58–59.

Plaintiff further relies on legal language couched as factual allegations to claim they were subject to the same workplace standards. For example, Plaintiff alleges that "the pay of Plaintiff and [] Baldecchi was not at any time based on a seniority system; a merit system; a system which measures earnings by quantity or quality of production; or a bona fide factor other than status within one or more protected class or classes, such as education, training, or experience." AC ¶ 60. Ironically, Plaintiff admits in his briefing that "this [is] legal language" used as "a way of expressing [] a fact." [ECF No. 23 at 7]. Plaintiff further quotes language directly from NYLL Section 194(1) to allege that he and Baldecchi "performed substantially similar work, when viewed as a composite of skill, effort, and responsibility, and they performed their work under similar

working conditions." AC ¶ 59. Such conclusory allegations do not support a find that Plaintiff was similarly situated to Baldecchi in all material respects.[4]

To be sure, Plaintiff alleges that "they both worked as IT Help Desk Technicians," and both "reported directly" to the same supervisor. AC ¶ 59, 61. However, "broad generalizations drawn from job titles" without more are insufficient. *Dass*, 2020 WL 1922689, at *6. Moreover, Plaintiff admits that he and Baldecchi worked in different geographic locations and, as of December 2021, Baldecchi had a different and higher position. AC ¶ 58, 61. Given Plaintiff's failure to plead that he and Baldecchi were similarly situated, this Court cannot draw even a minimal inference of discriminatory intent for purposes of his pay discrimination claim. As such, Plaintiff's second cause of action for pay discrimination claim is dismissed.

### III.   Failure to Promote (Section 1981)

Plaintiff finally asks the Court to draw a discriminatory inference from Defendant's failure to promote him to the vacant Systems Administrator position. In this case, Plaintiff claims to have been deprived a promotion to Systems Administrator after the position allegedly became vacant in 2018 and was not filled until three years later. AC ¶¶ 37, 39. He alleges that he first learned of the opportunity only once Baldecchi was promoted to the position, on the Monday following Plaintiff's security mistake. AC ¶¶ 29–30.

Here too Plaintiff does not make any factual allegations regarding animus, harassment, disparaging comments, or anything else that might directly lead to a conclusion that he was not promoted for a discriminatory reason. To suggest a discriminatory inference, Plaintiff primarily

---

[4] Plaintiff tosses out one final conclusory allegation stating that "[u]pon information and belief, other non-Black employees who worked as IT Help Desk Technicians, even if their titles were different than Plaintiff's, also received higher pay than Plaintiff for performing substantially similar work, when viewed as a composite of skill, effort, and responsibility, and performing their work under similar working conditions." AC ¶ 62. Plaintiff provides no additional factual support for his last-ditch blanket statement. For reasons discussed above, the Court finds this allegation too conclusory to state a plausible claim. *Iqbal*, 556 U.S. at 678.

alleges that Baldecchi had less experience as an IT technician than Plaintiff and generally "was not better qualified than Plaintiff for promotion." AC ¶¶ 31, 33.  Plaintiff provides no further factual allegations to demonstrate that he and Baldecchi were similarly situated in "all material aspects" before the promotion.  As previously noted, Plaintiff's allegations that that they "performed the same duties and responsibilities" and "performed substantially similar work" are wholly conclusory.  AC ¶¶ 58–59.  As such, this claim suffers from the same infirmity as the claims based on disparate pay and Plaintiff's termination.

Plaintiff's claim for failure to promote fails for an additional reason.  To state a claim for an allegedly discriminatory failure to promote, a plaintiff must allege that he applied for and was qualified for a job for which the employer was seeking applicants, and he was rejected for the position.  *Moy v. Perez*, 712 F. App'x 38, 41 (2d Cir. 2017); *see also Aulicino v. New York City Dep't of Homeless Servs.*, 580 F.3d 73, 80 (2d Cir. 2009).  Here, the Amended Complaint is devoid of any allegation that Plaintiff attempted to pursue or apply for the promotion. Plaintiff claims only that "he would have applied" had Defendant announced that there was an open spot.  AC ¶ 30.

The Second Circuit has held that a plaintiff need not show that he applied for a specific position if "(1) the vacancy at issue was not posted, *and* (2) the employee either had (a) no knowledge of the vacancy before it was filled or (b) attempted to apply for it through informal procedures endorsed by the employer." *Petrosino v. Bell Atl.*, 385 F.3d 210, 226–27 (2d Cir. 2004) (emphasis added); *see also James v. Pernod Ricard USA, LLC*, No. 21CV10795 (DLC), 2023 WL 2938162, at *4 (S.D.N.Y. 2023); *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 710 (2d Cir. 1998). Here, the Amended Complaint clearly demonstrates that Plaintiff did, in fact, know of the Systems Administrator vacancy because he affirmatively alleges that, since the vacancy occurred, he had assumed some of the managerial responsibilities previously performed by Saffrin, the person in that position.  AC ¶¶ 30, 40.  In fact, Plaintiff alleges the exact time period the role was empty

after Saffrin left, *see* AC ¶ 40, and during which he was "transferred some" of the duties from that position, *see* AC ¶¶ 40, 58.

Plaintiff could also support his claim with allegations that he had "attempted to apply for [the vacant position] through informal procedures endorsed by the employer." *Petrosino*, 385 F.3d at 226–27.  And yet, there are no allegations that Plaintiff ever attempted to apply for the vacant position through informal procedures endorsed by the employer, or through any means at all for that matter.  An employee can know of a vacancy without it being posted or announced, and when that is the case, he must act before he can state a claim that he was not promoted.  *See Petrosino*, 385 F.3d 210, 228 (noting that "posting failures may have excused [the employee] from filing a timely formal application" but "would not excuse her from informally applying for the positions" by "telling her supervisors that she wished to be considered . . . when [] [the company] decided to fill them"); *see also James*, 2023 WL 2938162, at *4 (suggesting on summary judgment that an employee who "expressed her disappointment" that she had not been promoted directly to human resources likely does not constitute a sufficiently concrete step to support a failure to promote claim).  Plaintiff simply fails to state any factual allegations to demonstrate that he attempted in any way to inquire about or pursue the open position.  Accordingly, Plaintiff's claim of discriminatory failure to promote under Section 1981 (his first cause of action) must be dismissed.

## IV.    NYCHRL and NYLL Claims

Plaintiff also asserts various state and city law claims under the NYCHRL and NYLL.  *See* Fifth, Sixth, and Seventh Causes of Action, AC Compl. ¶¶ 77–82.  Because, for the reasons outlined above, Plaintiff's federal law claims are dismissed, the Court does not consider these claims and declines to exercise supplemental jurisdiction over them.  28 U.S.C. § 1367(c)(3); *see also Britton v. Bronx Parent Hous. Network, Inc.*, No. 21-CV-7079 (JPO), 2022 WL 4332735, at

*4 (S.D.N.Y. Sept. 19, 2022).  Plaintiff's NYCHRL and NYLL claims are therefore dismissed

without prejudice to renewal in state court.

## **CONCLUSION**

For the foregoing reasons, Defendant's motion to dismiss is GRANTED.  The Clerk of the

Court is respectfully requested to terminate docket entry 20 and close this case.

**SO ORDERED.**

_____
**Date:  September 16, 2023**              **MARY KAY VYSKOCIL**
**New York, NY**                  **United States District Judge**